W. ALLEN and SUE V. BRAZELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brazell v. Commissioner
Docket No. 694-76.
United States Tax Court
T.C. Memo 1977-216; 1977 Tax Ct. Memo LEXIS 225; 36 T.C.M. (CCH) 907; T.C.M. (RIA) 770216; July 13, 1977, Filed W. Allen Brazell, pro se. Johnny B. Mostiler, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1973 in the amount of $1,750.22.
The issues for decision are (1) whether petitioners are entitled to a deduction of a net operating loss carryover to the taxable year 1973, and if so, the amount of such carryover; and (2) whether respondent was barred from determining a deficiency for the year 1973 by petitioners' written agreement to a proposed deficiency determined by respondent for the calendar year 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Houston, Texas at the time their petition in this case *226 was filed. They filed a joint Federal income tax return for the calendar year 1973 with the District Director of Internal Revenue at Austin, Texas. In 1956, W. Allen Brazell (hereinafter referred to as petitioner) began a business of manufacturing automobile batteries under the name of Aut-O-Cel Company. Thereafter, around the end of 1958 or the first of 1959, a corporation was formed under the name of Aut-O-Cel Company, Incorporated with 300,000 shares of stock, par value $1. Petitioner was initially issued 150,000 shares of the stock of this company for services and for turning over assets of his Aut-O-Cel Company including certain plastic molds for making parts for batteries and certain rights that he had acquired under an agreement made April 15, 1958, with an individual who had pending a patent application involving multiple cell battery construction. The agreement which petitioner entered into on April 15, 1958, with respect to the patent application involved a purchase by petitioner of the entire stock of parts, molds for connecting bars, and other items which were then being used by the individual who had the patent application pending. The agreement provided for *227 the payment of $3,500 by petitioner for the stock of parts, molds for connecting bars, and other items, and further provided royalty payments for a license granted with respect to the patent application. Petitioner in 1958 paid the $3,500 for the various items purchased and thereafter either he individually or the corporation, Aut-O-Cel Company, Incorporated, paid various sums for improvements to the various molds for use in the manufacture of batteries. The total amount paid for the molds and improvements to the molds was somewhere between $9,000 and $12,000. Some royalties were also paid under the agreement of April 15, 1958, and deducted in computing the income of either petitioner or the corporation in the year in which paid. The application for the patent ultimately was denied and no patent was issued. The corporation later failed. At the time it failed, the corporation had outstanding obligations to Houston Plastic Company for battery parts which that company had manufactured for it. Petitioner had turned his molds over to Houston Plastic Company to be used by that company in manufacturing products for Aut-O-Cel Company, Incorporated. When Aut-O-Cel Company, Incorporated *228 defaulted on its account with Houston Plastic Company, that company retained the molds petitioner had turned over to it and took some inventory of Aut-O-Cel Company, Incorporated which was in that corporation's warehouse. When Houston Plastic Company would not release to petitioner the molds he had supplied to them, petitioner and Aut-O-Cel Company, Incorporated filed a suit against Houston Plastic Company. A judgment for $15,000 was returned by the jury, but the jury verdict was reversed by the Judge and upon appeal the Judge's reversal was supported. In connection with the purchase and improvement of the plastic molds which had been used by Houston Plastic Company in the manufacture of battery parts for Aut-O-Cel, Incorporated, petitioner considered that in 1967 he had a bad debt of approximately $18,000. On petitioner's Federal income tax return for 1973 he claimed a net loss carryover from 1972 of $19,315.67 computed as follows: 1967
Bad Debts
[18,502.66)
1967
Business Loss
(645.09)
1967
Wages
8,350.53
1968
Business Loss
(2,117.84)
1968
Wages
8,188.16
1969
Business Loss
(798.23)
1970
Business Loss
(5,148.14)
1971
Business Loss
(1,424.82)
1971
Divorce Settlement
(6,000.00)
1972
Business Loss
(1,686.72)
1972
Wages
469.14
1973
Total Carryover
[19,315.67)
Deducted
*229 The $6,000 added into the loss for 1971 under the designation "Divorce Settlement" represented $6,000 which petitioner had paid to his former wife in connection with a divorce settlement. Respondent in his notice of deficiency disallowed the claimed net operating loss carryover of $19,315.67 with the following explanation: (a) It is determined that you did not sustain a net operating loss deduction within the meaning of section 172 of the Internal Revenue Code since the loss amount was partially attributable to non-deductible personal items and the remaining losses could have been fully absorbed in prior years. Accordingly, your taxable income for 1973 is increased in the amount of $19,315.67. Under date of April 23, 1975, the District Director of Internal Revenue at Houston, Texas sent a letter to petitioners enclosing a copy of a report explaining certain proposed adjustments in petitioners' tax liability for the year 1973. In this letter it was stated that if petitioners agreed with the findings, to "please sign the consent to assessment and collection portion at the bottom of the report and mail one copy to this office within 15 days from the date *230 of this letter." The letter further stated that if petitioners did not agree with the adjustments set forth, they might mail additional evidence to be considered, request a discussion of the findings with an examiner, or request a conference with a member of the conference staff. The change proposed in this letter was a disallowance of the claimed net operating loss carryover from 1972 to 1973, and the letter contained a detailed analysis of the method of arriving at the adjustment beginning with the year 1963 and going through the year 1972. Petitioners did not agree to the proposed adjustments for 1973. While petitioner was still questioning the proposed adjustments for 1973, the same agent who had been working on petitioners' 1973 tax liability contacted petitioner with respect to his 1974 tax liability. Under date of July 30, 1975, petitioner was sent by the District Director of Internal Revenue at Houston, Texas, a letter similar to that sent to him for the year 1973 under date of April 23, 1975. The letter of July 30, 1975, enclosed a copy of a report proposing to disallow a claimed loss carryover from 1973 to 1974 and making certain other adjustments, all of which resulted *231 in a deficiency for 1974 of $815 being proposed. After receiving this letter, petitioner called the agent whose name appeared on the report and discussed with the agent the meaning of the letter. During this conversation, petitioner asked the agent whether his signing the agreement form would take care of the matter. When petitioner asked this question, he had intended the inquiry to relate to both his 1973 and 1974 tax. The agent considered his discussion with petitioner to relate only to the year 1974. Petitioner signed his name under the following statement appearing at the bottom of the first page of the attachment to the letter of July 30, 1975, with respect to the calendar year 1974: Consent To Assessment And Collection. I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report: Therefore, I give my consent to either: (1) The immediate assessment and collection of the Additional Tax shown on Line M, plus any interest due on this tax, and also any Penalties shown on Line O, or (2) The Overpayment shown on Line N, plus any interest and adjusted by any Penalties shown on Line *232 O. At the top of the page which petitioner signed, under "Year" was the figure 74. After petitioner signed this statement, the $815 deficiency proposed in the letter for the calendar year 1974 was assessed against petitioner and paid by him. On November 6, 1975, respondent mailed to petitioners the notice of deficiency from which the appeal in this case was taken. OPINION Section 172, I.R.C. 1954, [1] provides for the allowance of a deduction for a taxable year of an amount equal to the aggregate of the net operating loss carryover to such year plus the net operating loss carryback to such year. This section provides, insofar as it would be applicable to a loss in 1967, that a net operating loss shall be first carried back to each of the 3 preceding taxable years and, if not absorbed by such carryback, the remaining portion may be carried forward to each of the succeeding 5 taxable years. In the instant case, petitioner has failed to show the amount, if any, of net operating loss he sustained in 1967. "Bad debts," even if shown to have been incurred, would not necessarily constitute net operating losses. The method of computing net operating losses is set forth in the *233 statute. In general, a net operating loss for a year is the result of a subtraction of business expenses and deductions from business income for that year and not the total of a bad debt loss which may have occurred in the particular year. Petitioner here has totally failed to show the actual existence of a bad debt in 1967. However, had he shown this, he would not have shown from this fact alone that he sustained a net operating loss in 1967. Even had petitioner sustained a net operating loss in 1967, he would have been required to first carry this loss back to 1964, then to 1965, and then to 1966 before any net operating loss carryover would result. Petitioner has likewise totally failed to show that he did in fact sustain the business losses claimed to have occurred in other years. Clearly the $6,000 paid on the divorce settlement would not be a business loss. In short, petitioner has totally failed to show any error on the part of respondent in disallowing his claimed loss carryover from 1972 to 1973. While it appears that there was a misunderstanding on petitioner's part when he *234 signed the consent to assessment and collection of the proposed deficiency for the calendar year 1974, it is clear from this record that neither respondent nor respondent's agent was responsible for this misunderstanding. The agreement form which petitioner signed for the year 1974 clearly stated that petitioner did not wish to further contest the findings "in this report," and therefore consented to the assessment and collection of the deficiency. The report which preceded on the same page the consent form signed by petitioner specifically stated that it covered only the calendar year 1974. Regardless of what petitioner had in mind when he talked to respondent's agent, from the document he signed he should have understood that this agreement in no way affected his tax liability for the year 1973. Therefore, respondent is in no way estopped with respect to the determination of a deficiency for the year 1973. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩